1

2

3

4

5

6

7

8             IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10   KAREN M. TAYLOR,

11              Plaintiff,              No. CIV S-08-0869 JAM DAD PS

12              vs.

MICHAEL B. DONLEY, Secretary
13   of the United States Air Force,        FINDINGS & RECOMMENDATIONS

14              Defendant.

15   _____/

16          This matter came before the court on April 8, 2011 for hearing of defendant's

17   motion for summary judgment (Doc. No. 56).  Plaintiff Karen Taylor, proceeding pro se,

18   appeared on her own behalf.  Edward Olsen, Esq. appeared on behalf of defendant Michael

19   Donley, Secretary of the Air Force.  Oral argument was heard, and defendant's motion for

20   summary judgment was taken under submission.

21          For the reasons set forth below, the undersigned now recommends that

22   defendant's motion be granted.

23   /////

24   /////

25   /////

26   /////

1

PLAINTIFF'S CLAIMS

Plaintiff is proceeding on her second amended complaint.  Therein, she alleges as follows.[1]  After 26 years of employment with the United States Air Force plaintiff requested a period of leave without pay and, upon her return to work, a light duty assignment.  Plaintiff's request was supported by documentation from seven doctors.  Defendant nonetheless denied plaintiff's request.

Plaintiff later complained about her supervisor's behavior to her union president.  Plaintiff's supervisor wrote to plaintiff and told her that her "life would be hell."  Thereafter, plaintiff was denied a promotion, overtime pay, mileage pay, received written discipline, and was "placed in a non-pay status when plaintiff had 130 hrs of uses or lose leave . . ."  (Sec. Am. Compl. (Doc. No. 31) at 2.)[2]

Plaintiff's supervisor also gave plaintiff, and all African American employees, a holiday card displaying African American people with braided hair.  Caucasian employees were given a holiday card displaying a Caucasian family.  Plaintiff's supervisor attempted to have plaintiff sign a receipt for a fraudulent purchase on a government credit card.  Plaintiff refused and the supervisor responded by giving plaintiff a poor performance review and suspending her for five days.  Plaintiff was subjected to threatening emails and phone calls at home and at work.

---

[1]  The allegations of plaintiff's second amended complaint are vague, conclusory, and nearly incomprehensible.  The complaint fails to allege facts that state the elements of the claims both plainly and succinctly and fails to allege with any degree of particularity the specific acts engaged in that support plaintiff's claims.  The second amended complaint also lacks reference to the most basic facts, such as the dates on which alleged incidents occurred and the names of individuals involved in the acts alleged.  Nonetheless, out of the necessity to articulate a somewhat coherent set of factual allegations for purposes of these proceedings, the undersigned has attempted to recount those allegations in the most clear, concise and complete manner possible.  However, the courts notes that many of plaintiff's allegations were not addressed by plaintiff in her filings in response to defendant's motion for summary judgment.  Defendant asserts that many of these unaddressed allegations relate to prior grievances filed by plaintiff concerning incidents that allegedly occurred between 1995 and 2002, and which are not properly before the court.  See Mem. of P&A (Doc. No. 56-1) at 17-18.

[2]  Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

1  Plaintiff was yelled at and pushed into a corner.  (Id.)

2     Eventually, plaintiff's job was eliminated.  Plaintiff was offered a new job as a

3  Child Care Provider but was not provided any training.  Moreover, plaintiff had just returned to

4  work after surgery and the job of Child Care Provider required her to lift children and walk five

5  to six miles, often uphill, for in-home visits.  The telephone in plaintiff's office was turned off,

6  requiring her to walk down a hall to another office to make and receive telephone calls

7  approximately twenty to thirty times a day.  Plaintiff was also denied an advancement of 240

8  hours of sick leave, while similar requests by non-African American employees were granted.  In

9  response to these events, plaintiff filed a complaint with the Equal Employment Opportunity

10  Commission ("EEOC").  (Id. at 2-3.)

11     On April 24, 2008, plaintiff commenced this action by filing her original

12  complaint. (Doc. No. 1).  Plaintiff then filed a first amended complaint on May 6, 2008.  (Doc.

13  No. 5.)  Defendant moved to dismiss the first amended complaint on November 26, 2008.  (Doc.

14  No. 15.)  On January 26, 2009, the undersigned granted defendant's motion to dismiss the first

15  amended complaint but also granted plaintiff leave to amend.  (Doc. No. 27.)

16     Plaintiff filed her second amended complaint on March 4, 2009.  (Sec. Am.

17  Compl. (Doc. No. 31.))  Therein, plaintiff set forth claims pursuant to 42 U.S.C. §§ 1981, 1983;

18  the Americans With Disabilities Act, 42 U.S.C. §§ 12101, et seq.; the Family Medical Leave Act,

19  29 U.S.C. §§ 2601, et seq.; the Fourteenth Amendment; Title VII, 42 U.S.C. §§ 2000e, et seq.;

20  and the Rehabilitation Act, 29 U.S.C. §§ 701, et seq.

21     On April 1, 2009, defendant moved for partial dismissal of plaintiff's second

22  amended complaint, only with respect to plaintiff's claims brought under 42 U.S.C. §§ 1981,

23  1983, the Americans With Disabilities Act, the Family Medical Leave Act, and the Fourteenth

24  Amendment.  (Doc. No. 35.)  Concurrently with that motion for partial dismissal, defendant filed

25  an answer to plaintiff's claims brought under Title VII and the Rehabilitation Act.  (Doc. No. 36.)

26  On March 10, 2010, the undersigned issued findings and recommendations recommending that

3

1   defendant's motion for partial dismissal be granted.  (Doc. No. 43.)  Those findings and

2   recommendations were adopted by the assigned District Judge on March 26, 2010.  (Doc. No.

3   45.)

4          On March 11, 2011, defendant filed the motion for summary judgment now

5   pending before the court.  (MSJ (Doc. No. 56.))  Plaintiff filed a 288-page opposition to

6   defendant's motion on March 29, 2011, (Pl.'s Opp.'n. (Doc. No. 58)), and defendant filed a reply

7   on April 1, 2011.  (Def.'s Reply (Doc. No. 60.))  In moving for summary judgment defendant

8   failed to comply with the Local Rules by failing to timely serve plaintiff with notice of the

9   motion for summary judgment, to provide the court with a courtesy copy of a deposition relied on

10  in the motion, and to provide a statement of undisputed facts.  (Doc. No. 62.)  On April 11, 2011,

11  defendant was ordered to correct these errors.  (Id.)  On April 12, 2011, defendant filed a

12  statement of undisputed facts (Def.'s SUF (Doc. No. 63)) and on April 19, 2011, plaintiff filed a

13  129-page response, styled as a "Statement of Disputed Facts and Material Facts in Support of

14  Plaintiff's Opposition of Defendant's Motion for Summary Judgment."  (Pl.'s SDF (Doc. No.

15  65).)

16                DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

17  I.  Legal Standards

18          Summary judgment is appropriate when it is demonstrated that there exists no

19  genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

20  of law.  Fed. R. Civ. P. 56(c).  See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970);

21  Owen v. Local No. 169, 971 F.2d 347, 355 (9th Cir. 1992).

22          A party moving for summary judgment always bears the initial
            responsibility of informing the district court of the basis for its
23          motion, and identifying those portions of "the pleadings,
            depositions, answers to interrogatories, and admissions on file,
24          together with the affidavits, if any," which it believes demonstrate
            the absence of a genuine issue of material fact.

25

26  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

                                        4

1      "[W]here the nonmoving party will bear the burden of proof at trial on a

2  dispositive issue, a summary judgment motion may properly be made in reliance solely on the

3  'pleadings, depositions, answers to interrogatories, and admissions on file.'" Celotex Corp., 477

4  U.S. at 323.  Indeed, summary judgment should be entered, after adequate time for discovery and

5  upon motion, against a party who fails to make a showing sufficient to establish the existence of

6  an element essential to that party's case, and on which that party will bear the burden of proof at

7  trial.  See id. at 322.

8      "[A] complete failure of proof concerning an essential element of the nonmoving

9  party's case necessarily renders all other facts immaterial." Id.  Summary judgment should then

10  be granted, "so long as whatever is before the district court demonstrates that the standard for

11  entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

12      If the moving party meets its initial responsibility, the burden then shifts to the

13  opposing party to establish that a genuine issue as to any material fact actually does exist.  See

14  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

15  establish the existence of this factual dispute, the opposing party may not rely upon the

16  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

17  form of affidavits, and/or admissible discovery material, in support of its contention that the

18  dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n. 11.  The opposing party

19  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

20  of the suit under the governing law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

21  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

22  1987).  The opposing party must also demonstrate that the dispute is genuine, i.e., that the

23  evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Wool

24  v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

25      To establish the existence of a factual dispute, the opposing party need not

26  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

5

1   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

2   trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

3   the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

4   Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

5   amendments).

6            In resolving the summary judgment motion, the court examines the pleadings,

7   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

8   any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

9   477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

10  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

11  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

12  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

13  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

14  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

15  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

16  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

17  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

18  II.  Defendant's Statement of Undisputed Facts and Evidence

19           Defendant's statement of undisputed facts is supported by declarations signed

20  under penalty of perjury and establishes the following.  Plaintiff was employed by the Air Force

21  as the Resource and Referral Clerk, for the Family Member Programs Flight, 60th Services

22  Squadron, at Travis Air Force Base, from December 15, 2002, until April 15, 2006.  Plaintiff's

23  duties as the Resource and Referral Clerk ("RRC") involved monitoring a wait list of future

24  openings for parents seeking to register their children for daycare at one of the three Child

25  Development Centers ("CDCs") located at the Air Force Base.  During her tenure as the RRC,

26  plaintiff was a GS-4 employee and worked in the Family Child Care Office.  (Def.'s SUDF (Doc.

1  No. 63) 1-3.)[3]

2          Until March of 2006, plaintiff's immediate supervisor was Alan Tornay, the Chief

3  of Family Member Programs.  Tornay's immediate supervisor was Brian Floyd, the Deputy

4  Director of the 60th Services Squadron.  In February of 2006, Tornay designated Shirley Collins

5  as plaintiff's immediate supervisor because Ms. Collins was located in the Family Child Care

6  Office and the RRC's duties fell under the rubric of Family Child Care.  Because his tenure as

7  plaintiff's immediate supervisor was coming to an end, Tornay provided plaintiff with a one-page

8  Progress Review Worksheet on March 1, 2006, which informed plaintiff of areas of her work

9  performance that needed improvement prior to her transition to Ms. Collins' supervision and

10  prior to plaintiff's final annual performance evaluation.  (Def.'s SUDF (Doc. No. 63) 4, 6, 8-9.)

11          The RRC position was eliminated in April of 2006.  The decision to eliminate the

12  position was made following a Staff Assistance Visit ("SAV") conducted by an inspection team

13  from the Air Mobility Command located at Scott Air Force Base, in Illinois.  During the SAV,

14  the inspection team reviewed the staffing and operations of the CDCs (which had been operating

15  at a loss) and, at the conclusion of their visit, recommended eliminating the RRC position for

16  financial reasons.  Based on the guidance and recommendation made by the inspection team,

17  Brian Floyd, the Deputy Director of the 60th Air Force Support Squadron at Travis Air Force

18  Base, issued a final approval to eliminate the RRC position.  At the same time, Floyd established

19  a Child Development Program Assistant position (also a GS-4 position) and requested that

20  plaintiff be reassigned to that position.[4]  By reassigning plaintiff, the Air Force was able to

21  continue employing plaintiff at the GS-4 level instead of subjecting her to a Reduction in Force.

22  (Def.'s SUDF (Doc. No. 63) 10-12, 15-16.)

23  _____

24          [3]  Citations to defendant's Statement of Undisputed Facts are to the specific numbered
undisputed fact asserted.

25          [4]  It appears that the funding for the Child Development Program Assistant position came
from a different source than the funding for the RRC position.  See (Def.'s SUDF (Doc. No. 63)

26  12-16.)

1    At a meeting held on April 7, 2006, plaintiff was informed that the RRC position

2 was being eliminated and that she was being reassigned to the Child Development Program

3 Assistant position.  Plaintiff was scheduled to begin work as the Child Development Program

4 Assistant in CDC I on April 17, 2006, where she would be supervised by the Director of CDC I,

5 Linda Wherry.  (Def.'s SUDF (Doc. No. 63) 17, 20.)

6    On April 13, 2006, however, plaintiff provided a memorandum to her then

7 supervisor, Shirley Collins, which stated only: "I Karen M. Taylor request that I be

8 Accommodate [sic] (See Attachment) sheet."  Attached to the April 13, 2006 memo was a one-

9 page "Industrial Work Status Form," dated April 11, 2006, from Dr. Helena Edith Weil, a

10 licensed clinical psychologist.  The Industrial Work Status Form stated that Dr. Weil had seen

11 plaintiff on April 11, 2006, and provided a "date of injury" as "Cumulative Injury from

12 September 2001 to present."  On the Industrial Work Status Form Dr. Weil further indicated:

13 "PT is to stay at Current Position, Resource & Referral Clerk at Travis Air Force Base until I

14 release her for full-work status."  Under the heading "Restrictions/Accommodations," Dr. Weil

15 wrote: "No transfer from Current Position."  (Def.'s SUDF (Doc. No. 63) 21-26.)

16    Also on April 13, 2006, Shirley Collins sent a memorandum to plaintiff in

17 response to her request for an accommodation.  (Collins Decl. (Doc. No. 56-2) at 6.)  The

18 memorandum included a copy of the Child Development Program Assistant Job Description and

19 requested from plaintiff "complete medical documentation of [her] current disability."  Id.

20 Plaintiff was advised that her "physician should be able to establish . . . the type of work you

21 cannot perform, as well as the duties you may be able to perform" and that the "information

22 provided should assist [defendant] in determining a proper medical accommodation for" plaintiff.

23 Id.  The memorandum requested a written statement signed by plaintiff's physician or medical

24 specialist, providing:

25    a.  The history of the medical condition, including references to
     findings from previous examinations, treatment, and responses to
26    treatment;

8

1       b.  Clinical findings from the most recent medical evaluation, including any of the following which have been obtained: findings

2       of physical examination, results of laboratory tests, X-rays, EKG's and other special evaluations or diagnostic procedures; and, in the

3       case of psychiatric evaluation or psychological tests, if appropriate;

4       c.  Diagnosis, including the current clinical status;

5       d.  Prognosis, including plans for future treatment and an estimate of the expected date of full or partial recovery;

6

7       e.  An explanation of the impact of the medical condition on overall health and activities, including the basis for any conclusion that restrictions or accommodations are or are not warranted, and

8       where they are warranted, an explanation of their therapeudic (sic) or risk avoiding value;

9

10      f.  An explanation of the medical basis for any conclusion which indicates the likelihood that the individual is or is not expected to suffer sudden or subtle incapacitation by carrying out, with or

11     without accommodations, the tasks or duties of the position (position description attached);

12

13     g.  Narrative explanation of the medical basis for any conclusion that the medical condition has or has not become static or well stabilized and the likelihood that the individual may experience

14     sudden or subtle incapacitation as a result of the medical condition.

15    Id. at 6-7.

16          On April 14, 2006, Collins found an envelope under her office door, which

17    contained a memorandum from plaintiff with the subject line "Advance Sick Leave."  That

18    memorandum stated only: "I Karen M. Taylor am requesting 240 hours of Advance Sick Leave."

19    Attached to the memorandum was an Application for Leave Form, requesting that plaintiff be

20    advanced 240 hours of sick leave.  Collins forwarded the request to Linda Wherry, the Director

21    of CDC I, because plaintiff was scheduled to start work as a Child Development Program

22    Assistant in CDC I on Monday, April 17, 2006.  On or about April 19, 2006, Collins received a

23    letter from Dr. Weil, informing her that she was happy to comply with Collins' April 13 request

24    for medical documentation of plaintiff's disability, but that Dr. Weil had just conducted her

25    initial interview with plaintiff on April 11, 2006, and that several more assessments were

26    required before she could answer Collins' questions.  (Def.'s SUDF (Doc. No. 63) 22-33, 35-36.)

1    Although plaintiff was scheduled to begin work as a Child Development Program

2    Assistant in CDC I on Monday, April 17, 2006, she called in sick that day and remained off

3    work through Thursday, April 20, 2006.  Plaintiff returned to work on Friday, April 21, 2006,

4    and spent that entire day (her first day as a Child Development Program Assistant) receiving

5    orientation and training under the supervision of Annette Gardner, the Training and Curriculum

6    Specialist.  On Monday, April 24, 2006, plaintiff observed a classroom for half of the day and

7    then departed.  Plaintiff never returned to work.  (Def.'s SUDF (Doc. No. 63) 37-39.)

8    On April 25, 2006, plaintiff submitted a letter from Dr. Eric Swann, which stated:

9    "Ms. Karen Taylor has an acute medical illness.  I am in support of Ms Taylor's leave as

10    recommended by Dr Helena Weil and Dr Donovan Shively.  I would support and recommend: at

11    least 6 weeks of leave, and/or additional leave that may be recommended by Dr. Weil."  On May

12    17, 2006, plaintiff submitted a letter from Dr. Weil, in support of a request for 240 hours of

13    advanced sick leave and to be returned to her former RRC position.  (Def.'s SUDF (Doc. No. 63)

14    45-47.)

15    On May 18, 2006, Anne Kohutanycz, an Air Force Employee Relations Specialist,

16    wrote plaintiff's union representative a letter stating that the Industrial Work form provided by

17    Dr. Weil and the doctor's slip provided by Dr. Swann did not constitute sufficient medical

18    documentation of plaintiff's disability.[5]  In her letter, Kohutanycz informed that the  required

19    documentation included: (1) a history of plaintiff's medical condition; (2) clinical findings from

20    plaintiff's most recent evaluation; (3) a diagnosis; (4) an explanation of the impact of plaintiff's

21    medical condition on her overall health and activities; and (5) whether an accommodation was

22    warranted and the basis for that accommodation.  The letter also noted that in order to approve

23    the request for advanced sick leave, plaintiff needed to submit a "statement indicating the date

24    _____

25    [5]  It appears that plaintiff was also advised via telephone on May 9, 2006, and May 16, 2006, that defendant still had not received the necessary medical documentation requested in the April 13, 2006, memorandum authored by Shirley Collins.  (Kohutanycz Decl. (Doc. No. 56-4) at

26    64.)

1   she is expected to return to normal duties," in addition to the medical documentation requested.

2   (Kohutanycz Decl. (Doc. No. 56-4) at 65.)  On May 26, 2006, Linda Wherry wrote plaintiff's

3   union representative a letter concerning plaintiff's request for 240 hours of advanced sick leave.

4   In her letter, Wherry stated that plaintiff's request needed to be supported by medical

5   documentation which provided details regarding plaintiff's condition; her prognosis; and an

6   estimate of the expected date of full or partial recovery.  Wherry informed the union

7   representative that plaintiff was expected to return to work by June 12, 2006, unless sufficient

8   medical information was provided to substantiate her continued absence.  (Def.'s SUDF (Doc.

9   No. 63) 53-56.)

10          Beginning June 6, 2006, and ending on November 30, 2006, plaintiff submitted a

11  series of work excuse letters from Dr. Micah Altman.[6]  Each letter stated that plaintiff would

12  "continue to be out on stress leave per my orders" until a given date.  (Wherry Decl. (Doc. No.

13  56-8) at 15-19.)  Plaintiff also submitted a letter from Dr. Altman, dated July 12, 2006, which

14  stated that plaintiff was suffering from severe depression and anxiety related to work stress.  The

15  July 12, 2006 letter from Dr. Altman stated that "Taylor complains that she continues to be

16  required to work on-line with children at the child care facility where she works" and that

17  "[s]ometimes she is the only one present to work with a group of one year old children."[7]  In that

18  letter, Dr. Altman also stated:

19          It is my opinion that Ms. Taylor is psychiatrically disabled due
           directly to being harassed on the job.  Again, she has no prior
20         history of psychiatric problems.  She states that she just wants to be
           allowed to do her job as she did prior to the trouble starting in
21         2001.  She states that prior to that she had an excellent work record
           with no emotional problems or impediments to her ability to work
22         and function.

23  (Def.'s SUDF (Doc. No. 63) 48-51.)

24          [6]  Defendant does not state the exact date plaintiff provided the letters from Dr. Altman.

25          [7]  However, plaintiff in fact had only worked a day and a half as a Child Development
26  Program Assistant and that her last day on the job had been on April 24, 2006.

1    On July 13, 2006, Wherry wrote a letter to plaintiff, indicating that she still had

2 not received the medical documentation requested in her May 26 letter and stating, "[a]lthough

3 the requirement for medical documentation has been identified repeatedly, both verbally and in

4 writing, the doctor's notes you have provided to date do not contain any specific history,

5 objective findings, or rational for the doctors' opinions." Wherry added that plaintiff would be

6 charged as absent without leave effective June 26, 2006, and directed plaintiff to report to work

7 on July 19, 2006. On December 8, 2006, plaintiff still had not reported to work and Wherry

8 issued a Notice of Proposed Removal (Non-Disciplinary) due to plaintiff's inability to maintain a

9 regular work schedule. In the Notice, Wherry stated that she had reviewed plaintiff's attendance

10 for the previous seven months and determined that she had been absent on leave, leave without

11 pay, or absent without leave since April 24, 2006, which was over fifty percent of plaintiff's

12 scheduled work hours for the calendar year. (Def.'s SUDF (Doc. No. 63) 57-60.)

13    On January 18, 2007, Kohutanycz and Wherry met with plaintiff's union

14 representative. Plaintiff did not attend the meeting. At the meeting, the representative made an

15 oral statement on behalf of plaintiff and provided another letter from Dr. Altman which stated, "I

16 am writing to you as Karen Taylor's treating Psychologist. Ms. Taylor will be able to return to

17 useful and efficient work with restriction and accommodations in the near future." Dr. Altman's

18 letter did not describe the nature of the anticipated restriction or accommodations, and did not

19 specify when plaintiff would return to work. During the meeting, plaintiff's union representative

20 informed Kohutanycz that Dr. Altman could not provide information about what restriction and

21 accommodations would be required until plaintiff was released to return to work. On January 24,

22 2007, Wherry issued a Decision to Remove plaintiff from her position as a Child Development

23 Program Assistant, effective January 26, 2007. (Def.'s SUDF (Doc. No. 63) 61-65.)

24    Plaintiff filed two consolidated EEO complaints alleging discrimination arising

25 out of the following four events: (1) the mid-year progress review worksheet that plaintiff

26 received from Alan Tornay on March 1, 2006; (2) the elimination of the RRC position and

1    plaintiff's reassignment to a position as a Child Development Program Assistant; (3) the meeting

2    held on April 7, 2006, at which plaintiff was informed that her position had been eliminated and

3    that she was being reassigned; and (4) the denial of plaintiff's requests to remain in the RRC

4    position and for 240 hours of advanced sick leave.  An EEOC Administrative Law Judge

5    considered the two consolidated EEO complaints and issued a decision in favor of the Air Force

6    on May 24, 2006.  The Air Force subsequently issued its final agency decision implementing the

7    Administrative Law Judge's decision in the two consolidated EEO complaints on March 28,

8    2008. (Def.'s SUDF (Doc. No. 63) 66-68.)

9            Plaintiff filed a third EEO complaint regarding her termination from the Air

10   Force.  On April 7, 2009, the Air Force considered that complaint and issued a decision finding

11   no discrimination.  Plaintiff appealed to the Merit Systems Protection Board ("MSPB") and the

12   Air Force subsequently informed the MSPB that plaintiff had already filed this civil action in

13   federal court.  An MSPB Administrative Law Judge dismissed plaintiff's appeal for lack of

14   jurisdiction and the full board of the MSPB affirmed.  The EEOC then denied plaintiff's request

15   for review of the MSPB's final order on the ground that the EEOC had no jurisdiction over

16   procedural matters of the MSPB.  (Def.'s SUDF (Doc. No. 63) 70-74.)

17           As required by the standards applicable to motions for summary judgment,

18   defendant has identified portions of the pleadings, materials obtained through discovery, and

19   affidavits that demonstrate the absence of a genuine issue of material fact as to plaintiff's claims.

20   The burden thus shifts to plaintiff to establish that a genuine issue of material fact actually exists.

21   In this regard, plaintiff must demonstrate that any fact in contention is material, i.e., it might

22   affect the outcome of the suit under the governing law and that the dispute is genuine, i.e., the

23   evidence might lead a reasonable jury to return a verdict for plaintiff.  Local Rule 260(b) requires

24   a party opposing summary judgment to (1) reproduce each fact enumerated in the moving party's

25   statement of undisputed facts and (2) expressly admit or deny each fact.  The opposing party is

26   also required to cite evidence in support of each denial.

1    Here, plaintiff has filed a "Statement of Disputed Facts and Material Facts in

2    Support of Plaintiff's Opposition of Defendant's Motion For Summary Judgement." (Pl.'s SDF

3    (Doc. No. 65.))  Therein, plaintiff reproduces only the statements of fact asserted by defendant

4    that plaintiff disputes.  Moreover, plaintiff frequently cites to portions of depositions taken with

5    respect to her EEOC complaints as supporting her denials.  However, not only were these

6    depositions not taken in connection with this civil action before this court, but plaintiff has only

7    provided the court with the deposition excerpts, sometimes providing only a few pages of a

8    deposition which appears to total hundreds of pages.  Local Rule 133(j), requires that a party

9    citing to deposition testimony provide the court with a courtesy copy, in either paper or electronic

10   format, of the entire deposition relied upon.  Nonetheless, the undersigned has reviewed

11   plaintiff's fillings in an effort to discern whether plaintiff denies any fact asserted in defendant's

12   statement of undisputed facts and, if so, what evidence plaintiff has offered that may demonstrate

13   the existence of a disputed issue of material fact.

14   Below, the court will address each of plaintiff's claims in light of the evidence

15   submitted by the parties in connection with defendant's motion for summary judgment and the

16   legal standards set forth above.

17   I.  Title VII

18   Title VII makes it unlawful for an employer to "discriminate against any

19   individual with respect to [her] compensation, term, conditions, or privileges of employment,

20   because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1).

21   1)  Discrimination

22   It is well-settled that Title VII is concerned not only with intentional

23   discrimination, but also with employment practices and policies that lead to disparities in the

24   treatment of classes of workers.  See, e.g., Griggs v. Duke Power Co., 401 U.S. 424, 430-31

25   (1971); Connecticut v. Teal, 457 U.S. 440, 446 (1982)  Thus, a plaintiff alleging discrimination

26   under Title VII may proceed under two theories: disparate treatment or disparate impact.  Ricci v.

14

1  DeStefano,557 U.S. 557, ___, 129 S. Ct. 2658, 2672 (2009); Watson v. Fort Worth Bank &

2  Trust, 487 U.S. 977, 986-87 (1988); The Committee Concerning Community Improvement v.

3  City of Modesto, 583 F.3d 690, 711 (9th Cir. 2009).  A person is discriminated against through

4  disparate treatment "when he or she is singled out and treated less favorably than others similarly

5  situated on account of race." McGinest v. GTE Service Corp., 360 F.3d 1103, 1121 (9th Cir.

6  2004) (quoting Jauregui v. City of Glendale, 852 F.2d 1128, 1134 (9th Cir. 1988)).  See also

7  Cornell v. Electra Cent. Credit Union, 439 F.3d 1018, 1028 (9th Cir. 2006).  While the disparate

8  treatment theory requires proof of discriminatory intent, intent is irrelevant to a disparate impact

9  claim.  Watson, 487 U.S. at 988; Garcia v. Spun Steak Co., 998 F.2d 1480, 1484 (9th Cir. 1993).

10  "[I]mpact analysis is designed to implement Congressional concern with 'the consequences of

11  employment practices, not simply the motivation.'"  Garcia, 998 F.2d at 1484 (quoting Rose v.

12  Wells Fargo & Co., 902 F.2d 1417, 1424 (9th Cir. 1990) (citations omitted)).  A *prima facie* case

13  of disparate impact is typically achieved by statistical evidence demonstrating the selection bias

14  of an employment practice.  Lawrence v. Dept. of Interior, 525 F.3d 916, 921 (9th Cir. 2008);

15  Stout v. Potter, 276 F.3d 1118, 1122 (9th Cir. 2002).

16          Here, plaintiff has failed to allege any facts, nor has she presented any evidence in

17  opposing summary judgment, that would suggest a cognizable disparate impact claim.

18  Accordingly, the undersigned will assess whether any evidence demonstrates the existence of a

19  disputed issue of material fact with respect to plaintiff's claim of discrimination based on

20  disparate treatment.

21          A plaintiff in a disparate treatment case bears the burden of alleging and proving

22  that the defendant employer intentionally discriminated against her.  Texas Dep't of Community

23  Affairs v. Burdine, 450 U.S. 248, 253 (1981); McGinest, 360 F.3d at 1122.  A plaintiff must,

24  therefore, allege and prove discriminatory motive on the part of the defendant.  International

25  Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977); Pejic v. Hughes

26  Helicopter, Inc., 840 F.2d 667, 672 (9th Cir. 1988).  A plaintiff may prove intent through either

1  "direct or circumstantial evidence demonstrating that a discriminatory reason more likely than

2  not motivated the employer." <u>Metoyer v. Chassman</u>, 504 F.3d 919, 930 (9th Cir. 2007); <u>Pejic</u>,

3  840 F.2d at 672.  An example of direct evidence of such intent is an employer's use of a racial

4  slur or epithet.  <u>Lindsey v. SLT Los Angeles</u>, LLC, 447 F.3d 1138, 1141 (9th Cir. 2006);

5  <u>Cornwell v. Electra Cent. Credit Union</u>, 439 F.3d 1018, 1029 n.7 (9th Cir. 2006).  In this case,

6  aside from vague and conclusory allegations, plaintiff has come forward with no direct evidence

7  of discriminatory intent on the part of defendant.

8        Alternatively, a plaintiff may rely on the familiar <u>McDonnell Douglas</u> burden

9  shifting framework to prove discriminatory intent.  <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S.

10  792, 802 (1973); <u>Surrell v. California Water Service Co.</u>, 518 F.3d 1097, 1105 (9th Cir. 2008).

11        The analysis has three steps.  The employee must first establish a
           prima facie case of discrimination.  If [she] does, the employer
12        must articulate a legitimate, nondiscriminatory reason for the
           challenged action.  Finally, if the employer satisfies this burden,
13        the employee must show that the reason is pretextual either directly
           by persuading the court that a discriminatory reason more likely
14        motivated the employer or indirectly by showing that the
           employer's proffered explanation is unworthy of credence.

15

16  <u>Davis v. Team Elec. Co.</u>, 520 F.3d 1080, 1089 (9th Cir. 2008) (internal citation and quotation

17  omitted).  The elements of a prima facie disparate treatment claim under Title VII are (1)

18  membership of the plaintiff in a protected class; (2) satisfaction by the plaintiff of the

19  qualifications for the position in issue; (3) an adverse employee action; and (4) more favorable

20  treatment of similarly situated individuals outside the plaintiff's protected class.  <u>Id.</u> at 1089.

21        Here, defendant does not dispute that plaintiff is a member of a protected class,

22  nor does defendant dispute that plaintiff satisfied the qualifications of her position.  Moreover, it

23  is at a minimum in dispute whether plaintiff suffered an adverse employee action.  "An adverse

24  employee action is one that materially affects the 'compensation, terms, conditions or privileges

25  of employment.'"  42 U.S.C. § 2000e-2(a)(1); <u>Chuang v. University of California</u>, 225 F.3d

26  1115, 1125-26 (9th Cir. 2000).  Here, there is evidence before the court that plaintiff received a

1  negative performance review, that her position was eliminated, that she was denied an

2  advancement of 240 hours of sick leave, that she was forced to transfer to another position and

3  that she was eventually terminated.  Such employment decisions can constitute an adverse

4  employment action.[8]  See Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000);

5  Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987); see also Mickelson v. New York Life

6  Ins. Co., 460 F.3d 1304, 1316-17 (10th Cir. 2006) .

7          With respect to the fourth element of a prima facie disparate treatment claim,

8  plaintiff must present evidence that "'similarly situated individuals outside [her] protected class

9  were treated more favorably, or other circumstances surrounding the adverse employment action

10  give rise to an inference of discrimination.'"  Hawn v. Executive Jet Management, Inc., 615 F.3d

11  1151, 1156 (9th Cir. 2010) (quoting Peterson v. Hewlett-Packard Co., 358 F.3d 599, 603 (9th

12  Cir. 2004)).  See also Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994).  Plaintiff's

13  evidence in support of this element need only be "minimal."  See Coghlan v. American Seafoods

14  Co. LLC., 413 F.3d 1090, 1094 (9th Cir. 2005).  Here, plaintiff testified at her sworn deposition

15  that similarly situated Caucasian employees were treated more favorably with respect to the

16  employee actions taken in her case.  See Pl.'s Depo. at 55:23-56:20, 122:6-124:15.

17          If a plaintiff establishes a prima facie case, "'[t]he burden of production, but not

18  persuasion, . . . shifts to the [defendant] to articulate some legitimate, nondiscriminatory reason

19  for the challenged action.'"  Hawn, 615 F.3d at 1155 (9th Cir. 2010) (quoting Chuang, 225 F.3d

20  at 1123-24).  See also Metoyer, 504 F.3d at 931 n.6 (noting that if plaintiff establishes a prima

21

22          [8]  Relying on the decision in Brooks v. City of San Mateo, 229 F.3d 917, 929-30 (9th Cir.
   2000), defendant argues that plaintiff's negative performance review was not an adverse
23  employee action because it was not her final annual evaluation but rather merely put her on
   notice of areas in her work in need of improvement prior to her final annual review.  However,
24  the evaluation at issue in Brooks was subject to change on appeal.  229 F.3d at 930.  There is no
   evidence before the court indicating that plaintiff could appeal her negative performance review.
25  It therefore appears that whether plaintiff's performance review was final may be a disputed issue
   of fact.  See Lelaind v. City and County of San Francisco, 576 F. Supp.2d 1079, 1098 (N.D. Cal.
26  2008).

1   facie case, the burden then shifts to defendant to articulate a legitimate, nondiscriminatory reason

2   for its allegedly discriminatory conduct).  Defendant's burden "is one of production, not

3   persuasion, thereby involving no credibility assessment."  Lindsey v. SLT Los Angeles, LLC,

4   447 F.3d 1138, 1147-48 (9th Cir. 2006).

5            Here, defendant has presented evidence of legitimate, nondiscriminatory reasons

6   for each employment action taken with respect to plaintiff.  In this regard, defendant has

7   presented the following evidence.  Alan Tornay, the Chief of Family Member Programs, issued

8   plaintiff a mid-year evaluation on March 1, 2006, because his tenure as plaintiff's immediate

9   supervisor was coming to an end and he wished to provide plaintiff with input regarding areas of

10  her job performance in need of improvement.  (Tornay Decl. (Doc. No. 56-7) at 2.)  Tornay

11  indicated on plaintiff's mid-year evaluation that she needed to improve in a number of areas

12  because she "was simply not doing the work she was required to do[.]"  (Id. at 2-3.)  Plaintiff's

13  position was eliminated due to financial reasons and that decision was made pursuant to the

14  recommendations of the SAV inspection team.  (Floyd Decl. (Doc. No. 56-3) at 2.)  Moreover,

15  upon the elimination of plaintiff's position, a new position was created for plaintiff at her same

16  pay grade, so that she could continue in her employment and avoid being subject to a work force

17  reduction.  (Id.)  Plaintiff's request for an advancement of 240 hours of sick leave was denied

18  because the medical documentation provided by plaintiff was insufficient to grant such a request

19  under the applicable Air Force policy.  (Wherry Decl. (Doc. No. 56-8) at 3; Kohutanycz Decl.

20  (Doc. No. 56-4) at 4.)  Plaintiff was informed on multiple occasions of the exact documentation

21  needed to support her sick leave advancement request, that she could resubmit her request with

22  the necessary documentation and that, absent approved medical leave, she was expected to return

23  to work.  (Wherry Decl. (Doc. No. 56-8) at 3-6.)  Plaintiff failed to submit the necessary

24  documentation, failed to return to work and was eventually terminated due to her inability to

25  maintain a normal work schedule.  (Id. at 6.)

26  /////

1    Assuming without deciding that plaintiff has established a prima facie disparate

2    treatment claim, the court finds that defendant has articulated and submitted evidence of

3    legitimate nondiscriminatory reasons for the challenged actions.  See Bodett v. Cox Com, Inc.,

4    366 F.3d 736, 744 (9th Cir. 2004) ("To determine whether Cox met its burden of production, this

5    court must take Cox's evidence supporting its alleged reason for terminating Bodett - that she

6    had violated the facial terms of its harassment policy - as true."); Vasquez v. County of Los

7    Angeles, 349 F.3d 634, 641 (9th Cir. 2003) (transfer of an employee who disobeyed a direct

8    order from a supervisor was a legitimate, nondiscriminatory reason); Aragon v. Republic Silver

9    State Disposal Inc., 292 F.3d 654, 661 (9th Cir. 2002) (seasonal downturn and poor job

10   performance were legitimate, nondiscriminatory reasons for termination); Winarto v. Toshiba

11   Am. Elec. Components, Inc., 274 F.3d 1276, 1295 (9th Cir. 2001) (a reduction in force

12   constituted a legitimate, nondiscriminatory reason for terminating employee); Coleman v. Quaker

13   Oats Co., 232 F.3d 1271, 1282 (9th Cir. 2000) ("A RIF is a legitimate nondiscriminatory reason

14   for laying off an employee."); see also Davenport v. Board of Trustees of State Center

15   Community College Dist., 654 F. Supp.2d 1073, 1095 (E.D. Cal. 2009) ("Failure to perform in

16   accordance with standards set by the employer is sufficient to constitute a legitimate business

17   reason for termination."); Leland v. City and County of San Francisco, 576 F. Supp.2d 1079,

18   1100 (N.D. Cal. 2008) (negative comments on employee's performance evaluation reflecting the

19   professional judgment and personal observation of the evaluator was a legitimate,

20   nondiscriminatory reason); Dotson v. County of Kern, No. 1:09-CV-1325 AWI GSA,  2011 WL

21   902142, at *16 (E.D. Cal. Mar. 15, 2011) (plaintiff's poor productivity was "non-retaliatory

22   reason" for unsatisfactory rating); Biba v. Wells Fargo & Co., No. C 09-3249 MEJ, 2010 WL

23   4942559, at *15 (N.D. Cal. Nov. 10, 2010) (employer's difficulty in obtaining requisite

24   background authorization forms and an incomplete I-9 form was a legitimate, nondiscriminatory

25   reason for terminating plaintiff); Njenga v. San Mateo County Superintendent of Schools, No. C-

26   08-04019 EDL, 2010 WL 1261493, at *15 (N.D. Cal. Mar. 30, 2010) (denial of leave request due

19

1 to the open-ended nature of the request was a legitimate, nondiscriminatory reason); <u>Ramirez v.</u>

2 <u>Salvation Army</u>, No. C06-0631 THE, 2008 WL 670153, at *8 (N.D. Cal. Mar. 6, 2008)

3 (reorganization and poor work performance are legitimate, non-discriminatory reasons for

4 discharging and failing to rehire an employee); <u>Dumas v. New United Motor Mfg. Inc.</u>, No. C

5 05-4702 PJH, 2007 WL 1223806, at *9-10 (N.D. Cal. Apr. 24, 2007) (violation of collective

6 bargaining agreement's leave policy was "legitimate nonretaliatory reason for plaintiff's

7 termination.").

8        Because defendant has articulated legitimate, nondiscriminatory reasons for the

9 challenged actions, plaintiff must "raise a triable issue of material fact as to whether the

10 defendant's proffered reasons . . . are mere pretext for unlawful discrimination." <u>Hawn</u>, 615 F.3d

11 at 1155-56. <u>See</u> <u>also</u> <u>Noyes v. Kelly Services</u>, 488 F.3d 1163, 1168 (9th Cir. 2007) ("Should the

12 defendant carry its burden, the burden then shifts back to the plaintiff to raise a triable issue of

13 fact that the defendant's proffered reason was a pretext for unlawful discrimination."). "'[A]

14 plaintiff can prove pretext in two ways: (1) indirectly, by showing that the employer's proffered

15 explanation is unworthy of credence because it is internally inconsistent or otherwise not

16 believable, or (2) directly, by showing that unlawful discrimination more likely motivated the

17 employer.'" <u>Noyes</u>, 488 F.3d at 1170 (quoting <u>Chuang</u>, 225 F.3d at 1127).

18        Direct evidence is evidence "which, if believed, proves the fact [of discriminatory

19 animus] without inference or presumption." <u>Godwin v. Hunt Wesson, Inc.</u>, 150 F.3d 1217, 1221

20 (9th Cir. 1998) (quoting <u>Davis v. Chevron, U.S.A., Inc.</u>, 14 F.3d 1082, 1085 (5th Cir. 1994))

21 (alteration in original).  Direct evidence typically consists of clearly sexist, racist, or similarly

22 discriminatory statements or actions by the employer.  <u>See, e.g.</u>, <u>Godwin</u>, 150 F.3d at 1221

23 (supervisor stated he "did not want to deal with [a] female"); <u>Cordova v. State Farm Ins.</u>, 124

24 F.3d 1145, 1149 (9th Cir. 1997) (alleged derogatory comments constitute direct evidence).

25        "Where evidence of pretext is circumstantial, rather than direct, the plaintiff must

26 produce 'specific' and 'substantial' facts to create a triable issue of pretext." <u>Earl v. Nielsen</u>

1   Media Research, Inc., 658 F.3d 1108, 1113 (9th Cir. 2011) (quoting Godwin, 150 F.3d at 1222).[9]

2   "[T]hat requirement is tempered by our observation that, in the context of Title VII claims, the

3   burden on plaintiffs to raise a triable issue of fact as to pretext is 'hardly an onerous one.'"

4   Noyes, 488 F.3d at 1170 (quoting Payne v. Norwest Corp., 113 F.3d 1079, 1080 (9th Cir. 1997)).

5   Nonetheless, a "plaintiff cannot create a genuine issue of pretext to survive a motion for

6   summary judgment by relying solely on unsupported speculations and allegations of

7   discriminatory intent." Crawford v. MCI Worldcom Communications, Inc., 167 F. Supp.2d

8   1128, 1135 (S.D. Cal. 2001). Moreover, "[m]erely denying the credibility of the employer's

9   proffered reasons is insufficient to withstand summary judgment." Munoz v. Mabus, 630 F.3d

10   856, 865 (9th Cir. 2010).

11          The court has reviewed plaintiff's submissions in opposition to summary

12   judgment and finds that she has failed to offer either direct or circumstantial evidence that

13   defendant's proffered reasons for the employment actions taken in her case are a mere pretext for

14   unlawful discrimination. Plaintiff has therefore failed to raise a triable issue of material fact as to

15   this claim.

16          In this regard, plaintiff argues in her opposition that the only time she saw her

17   supervisor Mr. Tornay "was when he was coming in to do acts made under the act of The Title

18   VII and of The Civil Rights Act 1964" and that his review of plaintiff's job performance coupled

19   with the annual review plaintiff was to receive by her new supervisor Collins, was "bad news for

20   the plaintiff." (Pl.'s Opp.'n. (Doc. No. 58) at 42.) Plaintiff contends that the decision to

21   eliminate the RRC position was made by the SAV team from Air Mobility Command, whom

22   plaintiff had emailed in 2004, notifying them of Tornay's mismanagement. (Id.) Plaintiff asserts

23

24          [9] But see Davis v. Team Electric Co., 520 F.3d 1080, 1091 & n.6 (9th Cir. 2008) (noting that whether a plaintiff must offer "specific" and substantial" circumstantial evidence of pretext, or some lesser evidence, to defeat summary judgment is a question not clearly resolved in the

25   Ninth Circuit); Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1029-31 (9th Cir. 2006) (questioning the continued viability of Godwin after the Supreme Court's decision in Desert

26   Palace, Inc. v. Costa, 539 U.S. 90, 100 (2003)).

1    that "Tornay tried again to set plaintiff up for failure and showing (sic) a loss of moneys and to

2    reflect the loss on the plaintiff." (Id. at 43.)  In addition, plaintiff argues that despite defendant's

3    assertion that she was terminated due to her failure to maintain a regular work schedule, she was

4    fired "with facts of: discrimination in plan, retaliation in the plan, harassment in the plan,

5    discrimination of age in plan . . . and disability discrimination in plan." (Id. at 45.)  Plaintiff's

6    arguments are insufficient to defeat summary judgment.

7           The court finds that plaintiff has offered merely unsupported speculation and

8    general allegations of discriminatory intent which fail to establish pretext on the part of

9    defendant either directly or indirectly.  Accordingly, defendant's motion for summary judgment

10    as to plaintiff's discrimination claim should be granted.

11           2) <u>Retaliation</u>

12           Title VII also prohibits retaliation by an employer "against an employee for

13    making a charge or otherwise participating in a Title VII proceeding."  <u>Nilsson v. City of Mesa</u>,

14    503 F.3d 947, 953 (9th Cir. 2007).  Under § 704 of the Civil Rights Act of 1964, it is unlawful

15           for an employer to discriminate against any of his employees . . .
16           because [the employee] has opposed any practice made an
            unlawful employment practice by [Title VII], or because [the
17           employee] has made a charge, testified, assisted, or participated in
            any manner in an investigation, proceeding, or hearing under [Title
18           VII].

19    42 U.S.C. § 2000e-3 (2000).  "To establish a claim of retaliation, a plaintiff must prove that (1)

20    the plaintiff engaged in a protected activity, (2) the plaintiff suffered an adverse employment

21    action, and (3) there was a causal link between the plaintiff's protected activity and the adverse

22    employment action."  <u>Poland v. Chertoff</u>, 494 F.3d 1174, 1179-80 (9th Cir. 2007).  <u>See also</u>

23    <u>Stegall v. Citadel Broadcasting Co.</u>, 350 F.3d 1061, 1065-66 (9th Cir. 2003)  "If the plaintiff

24    establishes a prima facie case, the burden then shifts to the defendant to articulate 'a legitimate,

25    nondiscriminatory reason for the adverse employment action.'"  <u>Sanders v. City of Newport</u>,  657

26    F.3d 772, 777 n3 (9th Cir. 2011) (quoting <u>Fonseca v. Sysco Food Servs. of Ariz., Inc.</u>, 374 F.3d

1   840, 849 (9th Cir. 2004).  If the employer articulates a legitimate reason for its action, the

2   plaintiff must then show that the reason given is pretextual.  See Pottenger v. Potlatch Corp., 329

3   F.3d 740, 746 (9th Cir. 2003).

4              Here, plaintiff has failed to allege with any specificity, let alone submit evidence

5   supporting such allegations, that she engaged in a protected activity or that she suffered an

6   adverse employment action for engaging in that protected activity.  Moreover, as noted above,

7   even assuming that plaintiff had stated a prima facie case of retaliation under Title VII, the court

8   finds that the defendant has offered evidence of legitimate, nondiscriminatory reasons for the

9   challenged employee actions and plaintiff has failed to demonstrate that those reasons are

10  pretextual.  Accordingly, defendant's motion for summary judgment as to plaintiff's retaliation

11  claim should also be granted.

12             3) Hostile Work Environment

13             Title VII also prohibits an employer from "requiring people to work in a

14  discriminatorily hostile or abusive environment."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21

15  (1993).  See also Dawson v. Entek International, 630 F.3d 928, 937-38 (9th Cir. 2011).  To state

16  a viable hostile work environment claim under Title VII, the plaintiff must allege facts showing

17  that her work environment was "permeated with 'discriminatory intimidation, ridicule, and

18  insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment

19  and create an abusive working environment.'"  Harris, 510 U.S. at 21 (citation omitted).  See also

20  Meritor Savings Bank v. Vinson, 477 U.S. 57, 67 (1986) ("For sexual harassment to be

21  actionable, it must be sufficiently severe or pervasive to alter the conditions of [the victim's]

22  employment and create an abusive working environment.") (internal quotation and citation

23  omitted); Dawson, 630 F.3d at 938 .

24             "Conduct that is not severe or pervasive enough to create an objectively hostile or

25  abusive work environment – an environment that a reasonable person would find hostile or

26  abusive – is beyond Title VII's purview."  Oncale v. Sundowner Offshore Services, Inc., 523

1   U.S. 75, 81 (1998) (quoting <u>Harris</u>, 510 U.S. at 21).  "[C]onduct must be extreme to amount to a

2   change in the terms and conditions of employment," lest Title VII become nothing more than "a

3   'general civility code.'"  <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788 (1998) (quoting

4   <u>Oncale</u>, 523 U.S. at 80.)  <u>See</u> also <u>Dawson</u>, 630 F.3d at 938 ("A plaintiff must establish that the

5   conduct at issue was both objectively and subjectively offensive: he must show that a reasonable

6   person would find the work environment to be "hostile or abusive," and that he in fact did

7   perceive it to be so."); <u>Porter v. California Dept. of Corrections</u>, 419 F.3d 885, 893 (9th Cir.

8   2005) (angry remarks and insults directed by co-workers at plaintiff, standing by themselves were

9   not sufficiently severe or pervasive to support a hostile-environment claim).

10           At the outset, the court finds that to the extent plaintiff has attempted to state a

11   hostile work environment claim, the allegations of her second amended complaint are simply too

12   vague and conclusory to state a claim upon which relief can be granted.  In this regard, in her

13   second amended complaint  plaintiff fails to name the individual or individuals involved in the

14   alleged actions and fails to provide the date on which any alleged incident occurred.  To state a

15   claim on which relief may be granted, the plaintiff must allege "enough facts to state a claim to

16   relief that is plausible on its face."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).

17   Although the Federal Rules of Civil Procedure adopt a flexible pleading policy, a complaint must

18   give the defendant fair notice of the plaintiff's claims and must allege facts that state the

19   elements of each claim plainly and succinctly.  Fed. R. Civ. P. 8(a)(2); <u>Jones v. Community</u>

20   <u>Redev. Agency</u>, 733 F.2d 646, 649 (9th Cir. 1984).  "A pleading that offers 'labels and

21   conclusions' or 'a formulaic recitation of the elements of cause of action will not do.'  Nor does a

22   complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancements.'"

23   <u>Ashcroft v. Iqbal</u>, 556 U.S. 662,___, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Twombly</u>, 550 U.S.

24   at 555, 557).  A plaintiff must allege with at least some degree of particularity overt acts which

25   the defendants engaged in that support the plaintiff's claims.  <u>Jones</u>, 733 F.2d at 649.

26   /////

1     In any event, the court finds that defendant has met its responsibility of

2  demonstrating the absence of a genuine issue of material fact with respect to any hostile work

3  environment claim and that plaintiff has failed to tender evidence of specific facts in support of

4  her contention that a disputed material issue exists.  Accordingly, defendant's motion for

5  summary judgment with respect to plaintiff's hostile work environment claim should be granted.

6     II.  The Rehabilitation Act

7     The Rehabilitation Act prohibits employment discrimination on the basis of

8  disability.  29 U.S.C. §§ 791 et seq.  Section 501 of the Rehabilitation Act (29 U.S.C. § 791)

9  expressly invokes the substance of the Americans with Disabilities Act (the "ADA").  Id.

10  (incorporating 42 U.S.C. §§ 12111 et seq.).  The Ninth Circuit looks to the standards applied

11  under the ADA to determine whether a violation of the Rehabilitation Act occurred in the federal

12  employment context.  Lopez v. Johnson, 333 F.3d 959, 961 (9th Cir. 2003) ("Section 501

13  borrows its substantive standards from the Americans with Disabilities Act (ADA).") (citing 29

14  U.S.C. § 791(g)); Coons v. Sec'y of the U.S. Dept. of Treasury, 383 F.3d 879, 884 (9th Cir.

15  2004) ("The standards used to determine whether an act of discrimination violated the

16  Rehabilitation Act are the same standards applied under the Americans with Disabilities Act");

17  Walton v. U.S. Marshals Serv., 492 F.3d 998, 1003 n. 1 (9th Cir. 2007) (citing Coons).

18     1)  Discrimination

19     To state a prima facie case under the Rehabilitation Act, a plaintiff must

20  "demonstrate that (1) she is a person with a disability, (2) who is otherwise qualified for

21  employment, and (3) suffered discrimination because of her disability."  Walton, 492 F.3d at

22  1005.  See also Reynolds v. Brock, 815 F.2d 571, 574 (9th Cir. 1987).  A plaintiff must

23  demonstrate that her disability was a motivating factor behind the discrimination.  29 U.S.C. §

24  791(g) (adopting standards for Americans with Disabilities Act for claims under § 501 of the

25  Rehabilitation Act, including 42 U.S.C. § 12112, which prohibits discrimination "against a

26  qualified individual with a disability *because of* the disability . . . ." (emphasis added)).

25

1    Once a prima facie case has been made, the burden shifts to the defendant to

2    demonstrate a legitimate, non-discriminatory reason for the action.  See Reynolds, 815 F.2d at

3    574; Lucero v. Hart, 915 F.2d 1367, 1371 (9th Cir. 1990); Wilborn v. Ashcroft, 222 F. Supp.2d

4    1192, 1206-07 (S.D. Cal. 2002) (applying McDonnell Douglas burden-shifting framework to

5    disability discrimination claim under Rehabilitation Act).  If defendant articulates a legitimate,

6    non-discriminatory reason for the action, the burden then shifts back to the plaintiff to produce

7    evidence showing that the reason offered by the defendant is pretextual.  See Smith v. Barton,

8    914 F.2d 1330, 1339-40 (9th Cir. 1990) (applying McDonnell Douglas framework for Title VII

9    discrimination claims to discrimination claim brought under ADA); Mustafa v. Clark County

10   Sch. Dist., 157 F.3d 1169, 1175 (9th Cir. 1998); Wilborn, 222 F. Supp.2d at 1206-07 (applying

11   McDonnell Douglas burden-shifting framework to disability discrimination claim under

12   Rehabilitation Act).  A plaintiff "may demonstrate pretext either directly by persuading the court

13   that a discriminatory reason likely motivated [the defendant] or indirectly by showing that [the

14   defendant's] proffered explanation is unworthy of credence."  Diaz v. Eagle Produce Ltd. P'ship,

15   521 F.3d 1201, 1212 (9th Cir. 2008) (citation and quotation marks omitted) (applying McDonnell

16   Douglas burden-shifting framework to claim under the Age Discrimination in Employment Act).

17          For the same reasons stated above with respect to plaintiff's other claims, the

18   court finds that even assuming, without deciding, that plaintiff has made a prima facie showing

19   of employment discrimination under the Rehabilitation Act, defendant has offered legitimate,

20   nondiscriminatory reasons for the challenged employment actions and plaintiff has failed to

21   produce evidence showing that those reasons are pretextual.

22          Accordingly, defendant's motion for summary judgment as to plaintiff's

23   employment discrimination claim under the Rehabilitation Act should also be granted.

24          2) Failure to Accommodate

25          With respect to a reasonable accommodation claim, the Rehabilitation Act

26   requires government agencies to reasonably accommodate an employee's disability.  See

26

1  Buckingham v. United States, 998 F.2d 735, 739 (9th Cir. 1993); see also Lopez, 333 F.3d at

2  960.  When a plaintiff alleges a failure to accommodate a disability under the Rehabilitation Act,

3  the burden is on the plaintiff to prove that she is a qualified individual with a disability, and that

4  "with or without reasonable accommodation, [she could] perform the essential functions of [her]

5  job." Buckingham, 998 F.2d at 739-40.  Then, if accommodation of the plaintiff as a qualified

6  individual with a disability is required to enable the plaintiff to perform the essential functions of

7  the job, the plaintiff must provide evidence sufficient to make at least a facial showing that a

8  reasonable accommodation is possible.  Id. at 740; Bateman v. U.S. Postal Serv., 151 F. Supp.2d

9  1131, 1143 (N.D. Cal. 2001); see also Lintz v. Potter, No. 2:09-cv-01907 GEB KJN PS, 2010

10  WL 2464866, at *7 (E.D. Cal. June 14, 2010); Ka"Anoi v. Dail, No. CIV S-07-2722 JKS EFB

11  PS, 2009 WL 3487083, at *9 (E.D. Cal. Oct. 23, 2009).  "If in response to the plaintiff's

12  evidence that reasonable accommodation can be made, the employer 'presents credible evidence

13  that reasonable accommodation is not possible or practicable, the plaintiff must bear the burden

14  of coming forward with evidence that suggests that accommodation may in fact be reasonably

15  made.'" Sisson v. Helms, 751 F.2d 991, 993 (9th Cir. 1985) (quoting Prewitt v. United States

16  Postal Service, 662 F.2d 292, 310 (9th Cir. 1981).  See also Ka"Anoi v. Dail, No. CIV S-07-2722

17  JKS EFB PS, 2009 WL 3487083, at *9 (E.D. Cal. Oct. 23, 2009).

18          Of course, a plaintiff must, "first demonstrate that [s]he is disabled within the

19  meaning of the ADA."[10]  Wellington v. Lyon County School Dist., 187 F.3d 1150, 1154 (9th Cir.

20  1999).  See also Wong v. Regents of University of California, 410 F.3d 1052, 1063 (9th Cir.

21  2005) ("The plaintiff bears the burden of proving that . . .  she is disabled within the meaning of

22  the Acts.").  The ADA defines a disability as:

23          (A) a physical or mental impairment that substantially limits one or
           more of the major life activities of such individual;

24

25  ───────────────

26      [10]  As noted above, the Rehabilitation Act borrows its substantive standards from the
     ADA.  Lopez v. Johnson, 333 F.3d 959, 961 (9th Cir. 2003).

27

1    (B) a record of such an impairment; or

2    (C) being regarded as having such an impairment.

3  Wong, 410 F.3d at 1063 (quoting 42 U.S.C. § 12102(2)).

4    Here, with respect to her claimed disability plaintiff merely alleges that she suffers

5  from numerous symptoms stemming from the loss of her RRC job and that while she remains

6  depressed, on medication and under the care of a psychologist, she is "fully capable of

7  performing her old position . . ." (Sec. Am. Compl. (Doc. No. 31) at 3-4.)  Such allegations do

8  not address how plaintiff is disabled within the meaning of the Rehabilitation Act.  Nonetheless,

9  assuming without deciding that plaintiff has established that she is a qualified individual with a

10  disability, and that with or without reasonable accommodation she could perform the essential

11  functions of her job, the court finds that plaintiff has failed to come forward with any evidence

12  sufficient to make a facial showing that a reasonable accommodation is possible in her case.

13    In this regard, plaintiff argues that the defendant "failed to accommodate her

14  disability by refusing to return her to her former position as the Resource and Referral Clerk and

15  by denying her request for 240 hours of advance sick leave." (Pl.'s Opp.'n. (Doc. No. 58) at 30.)

16  Plaintiff asserts that she "needed either or to accommodate her returning back from surgery . . . .

17  under the care of Dr. Donovan P. Shively . . ." (Id.)

18    At the outset, the court notes that the evidence submitted by plaintiff in opposition

19  to the pending summary judgment motion does not establish that Dr. Shively requested or

20  recommended that plaintiff remain in the RRC position or be granted 240 hours of advanced sick

21  leave.  On December 12, 2005, Dr. Shively stated that plaintiff was having surgery on January 9,

22  2006 and would need six weeks "post op."[11] (Pl.'s SDF (Doc. No. 65) at 113.)  On March 2,

23  2006, more than a month before the RRC position was eliminated and plaintiff requested an

24

---

25    [11]  It appears plaintiff may have used 80 hours of annual leave and 160 hours of sick leave
    beginning on January 6, 2006, and ending on February 17, 2006, in order to remain on leave for
26  six weeks after her surgery.  (Pl.'s SDF (Doc. No. 65) at 114.)

1  accommodation, Dr. Shively stated that plaintiff had surgery on January 9, 2006, and was "still

2  recovering from surgery, may not climb stairs, limit walking, and needs light duty."[12] Id. at 71.

3  Plaintiff has not offered any further documentation from Dr. Shively.[13]

4         It is undisputed that the RRC position had already been eliminated prior to April

5  13, 2006, the date plaintiff requested an accommodation.  In order to grant plaintiff's requested

6  accommodation of returning her to the RRC position, defendant would have had to re-create a

7  RRC job that had already been eliminated from the work force.  A "reasonable accommodation"

8  may include "job restructuring . . . reassignment to a vacant position . . . and other similar

9  accommodations."  42 U.S.C. 12111(9).  However, the creation of a new job does not constitute

10 a reasonable accommodation.  See Wellington, 187 F.3d at 1155 ("A "reasonable

11 accommodation" has not, however, been held to include creation of a new job.  To the contrary,

12 we have recently held that the ADA does not impose a duty to create a new position to

13 accommodate a disabled employee."); see also Moore v. Computer Associates Intern., Inc., 653

14 F. Supp.2d 955, 965 (D. Ariz. 2009) ("Defendant is correct that an employer need not create a

15 new part-time position to accommodate a disabled employee."); Sevcik v. Unlimited Const.

16 Services, Inc., 462 F. Supp.2d 1140, 1148 (D. Hawaii 2006) ("[T]he employer is not obligated to

17 create a new position to accommodate the disabled employee . . .").

18         With respect to plaintiff's request for an advancement of  240 hours of sick leave,

19 it is true that "an extended medical leave, or an extension of an existing leave period, may be a

20 reasonable accommodation if it does not pose an undue hardship on the employer."  Nunes v.

21

22    [12]  Defendant notes that plaintiff has presented no evidence that she provided these notes
   from Dr. Shively to defendant.  (Reply (Doc. No. 60) at 4.)

23    [13]  Moreover, nearly all the doctor's notes submitted to defendant in support of, plaintiff's
   request for an accommodation are from psychologists, specifically Dr. Weil and Dr. Altman, and
24 concern plaintiff's depression, anxiety and work related stress, not her return from surgery or a
   need for a light duty assignment.  Plaintiff did submit to defendant a short note from Dr. Eric
25 Swan, a family doctor, on April 25, 2006, in which Dr. Swan stated that plaintiff "has an acute
   medical illness" and that he supports and recommends "at least 6 weeks of leave, and/or
26 additional leave that may be recommended by Dr. Weil."  (Wherry Decl. (Doc. No. 56-8) at 28.)

1    Wal-Mart Stores, Inc., 164 F.3d 1243, 1247 (9th Cir. 1999).  Plaintiff, however, "bears the initial

2    burden of showing that 'the suggested accommodation would, more probably than not, have

3    resulted in [her] ability to perform the essential functions of [her] job.'"  Mustafa, 157 F.3d at

4    1176 (quoting Buckingham, 998 F.2d at 742-43).  See also Fallar v. Compuware Corp., 202 F.

5    Supp.2d 1067, 1084 (D. Ariz. 2002) ("Plaintiff must first prove that Defendant denied him

6    reasonable accommodations that would have otherwise allowed him to perform the essential

7    functions of his job.").

8              Here, the evidence submitted to the court in connection with this summary

9    judgment motion establishes that between April 14, 2006 (the date plaintiff first submitted her

10   request for an advancement of 240 hours of sick leave) and January 17, 2007 (when defendant

11   was told that plaintiff would have to remain on leave for an unknown period of time), plaintiff

12   had received well over 240 hours, (or thirty 8-hour workdays), of leave.  Indeed, as of January

13   17, 2007, plaintiff had been continuously off work for almost nine months.  Despite the passage

14   of a substantial period of time, and defendant's repeated and specific requests[14], plaintiff

15   remained unable to provide defendant with information to support her requested accommodation.

16   Nonetheless, at the January 17, 2007 meeting plaintiff's representative informed defendant that

17   plaintiff's physician still could not identify any applicable accommodations or restriction.  Even

18   now, the only accommodations identified by plaintiff are her requests for a return to the RRC job

19   and an advancement of 240 hours of sick leave.

20             Moreover, plaintiff identifies no other job which she could perform, other than the

21   eliminated RRC job, and rejects the offered employment in the Child Development Program

22   Assistant job that was created for her, arguing in her opposition to defendant's motion that she

23   "was not qualified to perform the essential functions" of that job.  (Pl.'s Opp.'n. (Doc. No. 58) at

24   

25        [14]  Specifically, defendant repeatedly but unsuccessfully sought a statement from a
     physician concerning what accommodations were warranted and the date plaintiff was expected
26   to return to normal duties.

                                                    30

1    38.)  In this regard, plaintiff alleges in her second amended complaint that while she remains

2    depressed, on medication and under the care of a psychologist, she is "fully capable of

3    performing her old position . . ."  (Sec. Am. Compl. (Doc. No. 31) at 4.)  The RRC position,

4    however,  was abolished in April of 2006.  Granting plaintiff any period of additional leave

5    would therefore have been futile, since it would not have resulted in plaintiff being able to

6    perform the essential functions of any available job.  See Dark v. Curry County, 451 F.3d 1078,

7    1088 (9th Cir. 2006) ("Dark has the burden of showing the existence of a reasonable

8    accommodation that would have enabled him to perform the essential functions of an available

9    job.").

10           For all of these reasons, the court finds that plaintiff has offered no evidence

11   showing that granting her 240 hours of advanced sick leave would have, more probably than not,

12   resulted in her being able to perform the essential functions of an available job.  See Dark, 451

13   F.3d at 1090 ("recovery time of unspecified duration may not be a reasonable accommodation

14   (primarily where the employee will not be able to return to his former position and cannot state

15   when and under what conditions he could return to work at all) . . ."); Humphrey v. Memorial

16   Hospitals Ass'n, 239 F.3d 1128, 1136 n. 13 (9th Cir. 2001) ("Of course, the requirement to grant

17   a leave where there are plausible reasons to believe that it would accommodate the employee's

18   disability can not be repeatedly invoked, thus permitting an unqualified employee to avoid

19   termination by requesting a leave of absence each time he is about to be fired."); Kimbro v.

20   Atlantic Richfield Co., 889 F.2d 869, 879 n. 10 (9th Cir. 1989) ("[T]he fact that an

21   accommodation has been attempted and was unsuccessful is a relevant consideration for the

22   factfinder and may in fact prove dispositive in determining whether failure to permit subsequent

23   leave constituted failure to make a reasonable accommodation."); Walsh v. United Parcel

24   Service, 201 F.3d 718, 727-28 (6th Cir. 2000) ("We therefore hold that when, as here, an

25   employer has already provided a substantial leave, an additional leave period of a significant

26   duration, with no clear prospects for recovery, is an objectively unreasonable accommodation.");

31

1    Hudson v. MCI Telecommunications, 87 F.3d 1167, 1169 (10th Cir. 1996) (rejecting plaintiff's

2    claim that her employer should have allowed her to take an indefinite leave of absence to recover

3    from her condition where plaintiff "failed to present any evidence of the expected duration of her

4    impairment as of the date of her termination" but noting that "a reasonable allowance of time for

5    medical care and treatment may, in appropriate circumstances, constitute a reasonable

6    accommodation . . ."); Myers v. Hose, 50 F.3d 278, 283 (4th Cir. 1995) ("We therefore hold that

7    reasonable accommodation does not require the County to wait indefinitely for Myers' medical

8    conditions to be corrected, especially in light of the uncertainty of cure."); Turner v. City and

9    County of Denver, Civil Action No. 10-cv-00583-PAB-KMT, 2011 WL 1595981, at 3* (D.

10   Colo. Apr. 27, 2011) ("Without any information about when an employee might be able to return

11   to work, such open-ended leave is not a reasonable accommodation.").

12           Accordingly, defendant's motion for summary judgment as to plaintiff's failure to

13   accommodate claim under the Rehabilitation Act should be granted.

14                                          CONCLUSION

15           Given the evidence presented by the parties on summary judgment, there does not

16   appear to be even a scintilla of evidence that defendant violated plaintiff's rights under Title VII

17   or the Rehabilitation Act.  See Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000)

18   ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does

19   not present a genuine issue of material fact" precluding summary judgment); see also Summers

20   v. A. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997).

21           In the absence of any evidence of a disputed issue of material fact regarding

22   plaintiff's claims, the court finds that defendant is entitled to summary judgment in its favor on

23   all of plaintiff's Title VII and Rehabilitation Act claims.  After adequate time for discovery,

24   plaintiff has failed to make a showing sufficient to establish the existence of any disputed issue

25   of fact regarding elements essential to her claims and on which she would bear the burden of

26   proof at trial.  There is no genuine need for trial in this case.

1        Accordingly, IT IS HEREBY RECOMMENDED that:

2        1.  Defendant's March 11, 2011 motion for summary judgment (Doc. No. 56) be

3   granted; and

4        2.  This action be dismissed.

5        These findings and recommendations will be submitted to the United States

6   District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within

7   seven (7) days after being served with these findings and recommendations, any party may file

8   written objections with the court.  A document containing objections should be titled "Objections

9   to Magistrate Judge's Findings and Recommendations."  Any reply to objections shall be filed

10  within seven (7) days after the objections are served.  The parties are advised that failure to file

11  objections within the specified time may, under certain circumstances, waive the right to appeal

12  the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

13  DATED: January 30, 2012.

14

15                                        _____

16                                        DALE A. DROZD
                                          UNITED STATES MAGISTRATE JUDGE

17  DAD:6
    Ddad1\orders.pro se\taylor0869.msj.f&rs
18

19

20

21

22

23

24

25

26

33